# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **ROY V. PASCHAL**, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:06CV00053 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **RELIANCE STANDARD LIFE** ) | By: James P. Jones |
| **INSURANCE COMPANY,** ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Joshua F. P. Long, Woods Rogers PLC, Roanoke, Virginia, for Defendant.*

The plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 1999 & Supp. 2006), challenging the termination of his long-term disability benefits. Since I find that the decision to deny benefits was not an abuse of discretion, the defendant's motion for summary judgment will be granted.

I

The plaintiff, Roy V. Paschal, seeks review of the decision by the defendant, Reliance Standard Life Insurance Company ("Reliance"), to deny him long-term disability ("LTD") benefits under the provisions of a group plan ("the Plan").

Reliance has filed the administrative record of the claim and based on that record, both parties have moved for summary judgment. The issues have been briefed and the case is ripe for decision.[1]

The facts of this case, as disclosed by the administrative record, are as follows. The plaintiff worked for General Shale Products Corporation ("General Shale") as a production supervisor through December 1, 1997. General Shale provided LTD benefits through the Plan to its employees, administered by the Reliance. Under the Plan, "totally disabled" is defined as follows:

> (1) during the Elimination Period and for the first 60 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of *his/her regular occupation*;
>
> > (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
> >
> > (b) "Residual Disability" means being Partially Disabled during the Elimination

---

[1] Neither party has requested oral argument and I find that the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

> Period. Residual Disability will be considered Total Disability; and
>
> (2) after a Monthly Benefit has been paid for 60 months, an Insured cannot perform the material duties of *any occupation*. Any occupation is one that the Insured's education, training, or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

(R. at 116) (emphasis added).

The plaintiff suffers from chronic neck and lower back pain. He first injured his back in 1991 and underwent two surgeries to repair herniated disks. On January 7, 1997, he ruptured a lower thoracic disk while crawling under a conveyer belt at work. To repair this injury, he has had several surgeries and has been treated with various narcotic medications, but continues to complain of chronic pain throughout his body.

The plaintiff filed an application dated June 8, 2000, for LTD benefits, claiming that he had become disabled on December 2, 1999. He listed his disability as "acute, chronic pain in thoracic [sic]/lumbar area." (R. at 151.) His application was accepted and he began receiving LTD benefits effective May 30, 2000. For the next few years, the plaintiff received benefits pursuant to the Plan's sixty-month period for persons unable to perform their "regular occupation."

As part of a continuing review of the plaintiff's claim, Reliance required that the plaintiff undergo a functional capacity evaluation. This evaluation was conducted on July 6, 2001, at Smyth County Community Hospital, by Robert J. O'Donnell, a physical therapist. In his narrative report, O'Donnell stated that the plaintiff "exhibited some symptom exaggeration behavior." (R. at 198.) O'Donnell also noted that because of the plaintiff's poor effort during the evaluation, the results may be borderline invalid and hence, "other data should be considered to help understand the true functional ability and to assist with medical and vocational planning." (*Id.*) Yet, despite the plaintiff's poor effort, the functional capacity evaluation still showed that the plaintiff was capable of working at a sedentary level and had the ability to frequently sit, stand, walk, and reach below shoulder-level on a regular basis in an eight-hour work day.

Reliance forwarded the functional capacity evaluation report to the plaintiff's treating physician, Samuel D. Vernon, M.D., who replied that he "agree[d] with the findings and . . . conclusions." (R. at 226.) Dr. Vernon did note, however, that "[t]he problem with Mr. Paschal is more with pain rather than decrease in physical capabilities per se." (*Id.*)

The plaintiff's file was also referred to Kathy Malone, a vocational case manager, for a transferable skills analysis report. Malone opined that based on his

-4-

physical capabilities, education, training, and experience, the plaintiff was capable of performing the alternative occupations of branch manager, department store manager, bakery manager, department manager, and program manager.

The insurance company also required that the plaintiff undergo an independent medical examination conducted by James P. Little, M.D., on June 2, 2003. Dr. Little concluded that on a regular basis in an eight-hour workday, the plaintiff was capable of frequently sitting and occasionally standing, walking, bending at waist, squatting at knees, climbing stairs, reaching above and below shoulder-level, using foot controls and driving. Consequently, Dr. Little found that the plaintiff was capable of working at a light exertion level. In his report, Dr. Little stated that the plaintiff "will require significant psychological support and behavior modification to re-enter the work force [and] there continues to be a significant anxiety/depression component." (R. at 303.) But Dr. Little also stated, "I do not see any physical abnormality which would preclude the patient from eventually re-entering the work force." (*Id*.)

Reliance forwarded Dr. Little's independent medical examination report to Dr. Vernon and requested that he reply with his comments. Dr. Vernon responded on July 28, 2004, that "[t]he recommendations by Dr. Little are, I am afraid, rather, at this point, lofty and actually not very likely to occur. We must bare in mind that Mr.

-5-

Paschal has seen numerous specialists in both the field of neurosurgery and in the field of pain management . . . ." (R. at 298.)

Despite Dr. Vernon's response, the plaintiff was informed in a letter from Reliance dated November 12, 2004, that his LTD benefits would end effective May 30, 2005, because the defendant had determined that he "would not meet the definition of *Totally Disabled* as defined in the group policy" as of this date. (R. at 5.) Reliance stated in this letter that the plaintiff's medical information and the claim documents submitted showed that the plaintiff was not incapable of performing the material duties of "any occupation" and therefore, he was not entitled to LTD benefits beyond the sixty-month "regular occupation" period. The defendant also noted that even if the plaintiff's anxiety or depression prevented him from working, the Plan had a twenty-four month benefit limitation for total disabilities stemming from mental/nervous disorders.

The termination letter notified the plaintiff that he had 180 days to request that the defendant review its decision. The plaintiff never pursued an administrative appeal and instead filed this suit.[2]

---

[2] Reliance also contends that because the plaintiff failed to administratively appeal the denial of benefits, this case must be dismissed with prejudice. In support of this argument, the defendant relies on a recent Fourth Circuit case, *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 230 (4th Cir. 2005). Since I find that the defendant did not abuse its discretion in denying LTD benefits, I need not address this issue.

-6-

II

When reviewing the denial of benefits in a case brought under ERISA, a court applies a de novo standard of review unless the relevant plan grants the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989). If the court finds that the plan does vest in its administrator such discretion, the court must then decide whether the administrator acted within the scope of its vested discretion. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d. 518, 522 (4th Cir. 2000). As long as the administrator acted within the scope of its conferred discretion, the court will review the denial of benefits under the deferential abuse of discretion standard. *Ellis v. Metro. Life Ins. Co.*, 126 F.3d. 228, 232 (4th Cir. 1997).

Under the deferential abuse of discretion standard, a court will not disturb the administrator's decision as long as it is objectively reasonable, even if the court would have reached a different conclusion. *Doe v. Group Hospitalization & Med. Servs.*, 3 F. 3d. 80, 85 (4th Cir. 1993). An administrator's decision will be considered reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). In short, in considering whether the administrator's decision was reasonable,

one important factor is "the adequacy of the materials considered to make the decision and the degree to which they support it." *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342 (4th Cir. 2000).

Another relevant factor is whether the administrator operated under a conflict of interest. *Id*. at 342. As the Fourth Circuit has stated, "The circumstances under which we have suggested a conflict of interest might arise are when a plan is managed by its insurer, whose revenue comes from fixed premiums paid by the plan's sponsor. In such a case, we were willing to assume that the insurer-administrator's profit motives unavoidably factored into its decisions to accept or deny plan members' claims . . . ." *Colucci v. AGFA Corp. Severance Pay Plan*, 431 F.3d 170, 179 (4th Cir. 2005). But when there is a conflict of interest, it "must be weighed as a facto[r] in determining whether there is an abuse of discretion." *Firestone Tire & Rubber Co.*, 489 U.S. at 115 (internal quotations omitted). In such a case, a court "will not act as deferentially as would otherwise be appropriate. . . . In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe*, 3 F.3d at 87.

Regardless of whether there is a conflict of interest, a plan administrator is never required to accord special deference to the treating physician's opinions. *See*

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The Supreme Court there held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id*. at 834.

The denial of LTD benefits here should be reviewed under an abuse of discretion standard, as the Plan explicitly confers discretionary authority on the defendant. The Plan states in relevant part: "Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." (R. at 118.) While Reliance correctly notes that the plaintiff has not asserted that there is a conflict of interest, I find that even taking into account a conflict of interest, the defendant did not abuse its discretion in denying the plaintiff LTD benefits under the Plan. Substantial evidence supported the defendant's conclusion that the plaintiff would not satisfy the definition of totally disabled following the five-year "regular occupation" period. In particular, the defendant relied on the transferable skills analysis report, the functional capacity evaluation, and the independent medical examination. Even the plaintiff's treating physician Dr. Vernon generally agreed with

the findings of the functional capacity evaluation. (R. at 226.) While Dr. Vernon did disagree with the independent medical examiner's conclusions, the defendant was not required to give special weight to Dr. Vernon's opinion. *See Black & Decker Disability Plan,* 538 U.S. at 825. And as the defendant correctly points out, it was justified in disregarding Dr. Vernon's opinion, since he provided no support for his conclusions other than listing the numerous specialists the plaintiff had seen, and his opinion seemed to be based almost entirely on the plaintiff's subjective self-reports of pain.

In short, since the decision to deny the plaintiff LTD benefits was the result of a deliberate and principled reasoning process and was supported by substantial evidence, the defendant did not abuse its discretion. The defendant is thus entitled to summary judgment.

III

For the reasons stated, the plaintiff's motion for summary judgment will be denied and the defendant's motion for summary judgment will be granted. A separate final judgment will be entered.

-10-

DATED: April 23, 2007

 /s/ JAMES P. JONES
Chief United States District Judge